UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
*********************************************************

**Alejandro Vega,**

**Plaintiff,**

-v-                                         **9:07-CV-0205**

**Harley Lappin; Director of FBOP; T.R. Craig, Warden,
FCI RayBrook; C.E. Miller, HSA, FCI RayBrook; Dr.
Dawn Marini, Clinical Director, FCI RayBrook; John Doe,
Physician Assistant; Hugh G. Harris, MD, Orthopedic
Surgeon, in their individual and official capacities,**

**Defendants.**

*********************************************************

APPEARANCES:

Alejandro Vega
20253-038
FCI - MB
PO Box 1500
Butner, North Carolina 27509
*Plaintiff, Pro Se*

Office of the United States Attorney                    Charles E. Roberts, Esq.
100 South Clinton Street
Syracuse, New York 13261-7198
*Attorney for Defendants*

**Hon. Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

On February 26, 2007, plaintiff, an inmate in federal custody, commenced this *pro se* civil

rights action pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971). Defendants Harley Lappin, T.R. Craig, C.E. Miller and Dawn Marini move for

summary judgment and dismissal of plaintiff's amended complaint pursuant to Fed. R. Civ. P.

56.[1]

# FACTUAL BACKGROUND

Familiarity with this matter is presumed based upon this Court's prior Memorandum-Decision and Order (Dkt. No. 43) and United States Magistrate Judge Randolph F. Treece's Report and Recommendation (Dkt. No. 41). The facts in this case, unless otherwise noted, are undisputed.[2]

## Medical Complaints and Treatment

On August 20, 1992, prior to his federal incarceration, plaintiff sustained an injury to his right forearm as a result of a close-range gunshot. Between 1992 and 1994, plaintiff had three major reconstructive surgeries for his arm at Brigham and Women's Hospital in Boston, Massachusetts. Orthopedic hardware was inserted into plaintiff's arm and bone, muscle and venous grafting was performed. As a result, plaintiff's joints did not unite properly and he was left with a gross deformity of the right upper extremity. On September 20, 1995, plaintiff entered the Ray Brook Federal Correctional Institution (FCI Ray Brook) and was subjected to an initial

---

[1] According to defense counsel, Hugh G. Harris is not a Bureau of Prisons' employee. Harris has not been served with the amended complaint. This Court previously dismissed all claims against defendant John Doe.

[2] The facts set forth in this section are taken from: (1) the amended complaint; (2) the answer; (3) defendants' statements of material facts; (4) the exhibits and evidence submitted by defendants in support of their motions for summary judgment (Dkt. Nos. 33, 60, 78); and (5) the exhibits and evidence submitted by plaintiff in opposition to defendants' motions for summary judgment (Dkt. Nos. 40, 63, 79). Plaintiff's exhibits include sick call records, grievances and defendants' responses to the grievances. The documents are not in proper evidentiary form. However, defendants do not dispute the authenticity of the exhibits. Accordingly, the Court will consider the documentation in the context of the within motion.

In support of the motion, defendants properly filed a Statement of Material Facts pursuant to Local Rule 7.1. Plaintiff failed to specifically admit or deny defendants' factual statements as required by Local Rule 7.1. *See Michalski v. Home Depot, Inc.*, 225 F.3d 113, 115 (2d Cir. 2000) (non-movant did not respond to statement and therefore, factual assertions were uncontested). Therefore, to the extent that defendants' statements are supported by the record, the Court will deem defendants' facts admitted by plaintiff. *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). The facts, as discussed herein, are for the relevant time period as referenced in the amended complaint.

intake evaluation.  The examining physician noted that plaintiff's right arm was deformed due to surgery for a gunshot wound.[3]  Based upon plaintiff complaints of pain, an orthopedic consultation was scheduled.  On October 18, 1995, Christopher Horn, M.D. examined plaintiff and opined that, "any operative procedure should be preceded by another attempt at union of the ulna . . . [t]his might be accomplished by ulnar rodding and bone graft.  If it is possible to secure union (operation followed by custom-made brace), then further reconstruction of the forearm flexors for gross grip may be a possibility".  Dr. Horn requested copies of plaintiff's medical and hospital records relating to his prior surgeries.

In December 1995, while incarcerated at FCI Ray Brook, plaintiff alleges that he slipped and fell on an icy sidewalk.  On or about December 28, 1995, plaintiff went to the medical department complaining of pain in his right arm and, according to the physician's assistant, plaintiff, "wanted to know if he would be having surgery".  The physician's assistant noted, "please have pt see MD for further evaluation to answer questions re surgery" and gave plaintiff a prescription for Ibuprofen.  On January 5, 1996, the sick call records indicate that plaintiff complained that the cold weather caused extreme pain in his right arm.  The attending physician, R. Davis, M.D., noted, "I am persuaded that this patient is experiencing a high degree of pain with exposure to the current temperatures".

On March 7, 1996, plaintiff was transferred to the U.S. Medical Center for Federal Prisoners in Springfield, Missouri for an orthopedic evaluation and possible surgery.  On March

---

[3] Plaintiff's medical records are sealed medical records on file with the court. In support of the motion, defendants provide a summary of the medical records through the affidavit of Dawn Marini, M.D. Dr. Marini avers that she reviewed plaintiff's medical records.  Plaintiff has not objected to the admissibility of these records, therefore the Court accepts the medical records as evidence and the statements contained therein as true. *See Jackson v. Onondaga County*, 1998 WL 713453, at *5 (N.D.N.Y.1998).

18, 1996, plaintiff was evaluated by Hugh G. Harris, M.D., an orthopedic surgeon who noted that plaintiff's arm was "non-functional". X-rays were taken and revealed a well established non-union site with a plate along the ulna and humerus. Dr. Harris recommended a fluoroscopic examination to determine the nature of plaintiff's injury. On March 28, 1996, the procedure was performed and revealed a fractured plate and pseudarthrosis.[4] On May 13, 1996, plaintiff was re-evaluated by Dr. Harris, M.D. Dr. Harris opined that, "I do not feel any surgical intervention would result in a reasonable chance for improvement in his overall condition and, indeed, could compromise the tenuous status of the viability of his right upper extremity".

On May 17, 1996, a Transfer Summary was prepared by Bob G. Smith, M.D., chief of surgery at the U.S. Medical Center in Springfield. Dr. Smith noted that plaintiff was given INH in March 1996 but that he missed several doses and was noncompliant.[5] Plaintiff was diagnosed with status post gunshot to the right distal humerus and pseudarthrosis of the right ulna. Dr. Smith recommended transfer, "back to the parent institution", duties commensurate with limitations in his right arm, velcro shoes and noted that plaintiff should be handcuffed in the front.

In September 1996, plaintiff again complained of arm pain. The treating physician, Dr. Maleh, indicated that he would follow up with Dr. Horn and prescribed Ibuprofen for plaintiff's pain. On February 20, 1997, Dr. Horn re-examined plaintiff and noted that he was, "about the same". Dr. Horn concurred with Dr. Harris but noted, "it would be reasonable to attempt further straightening at the site of forearm fracture with internal fixation and bone grafting."

---

[4] Pseudarthrosis is the deossification of a weight bearing long bone, followed by bending and pathologic fracture, with inability to form normal callus leading to existence of a "false joint". *Dorland's Illustrated Medical Dictionary*, 1563 (31st ed. 2007).

[5] INH is an abbreviation for isoniazid which is an antibacterial used as a tuberculostatic (inhibiting growth of tuberculosis. *Dorland's* at 953, 979, 2008.

From late 1997 through June 2000, the record contains only one notation relating to plaintiff's arm.  On January 20, 1999, plaintiff complained of chronic arm pain, a cough, ear ache and fever.  The physician's assistant gave plaintiff a prescription for antibiotics.

On July 11, 2000, plaintiff complained of pain and sensitivity near his elbow when it "rubbed" against his clothing.  The physician's assistant ordered a new orthopedic consultation.  On September 7, 2000, Dr. G. Mina, an orthopedic specialist, examined plaintiff and reported that it was difficult, if not impossible, for plaintiff to regain any hand function.  Dr.Mina opined that it may help the "flail elbow by doing a bone graft.  But if he has no significant pain, this can stay on hold".

From September 2000 until February 2005, plaintiff made one complaint with respect to his arm.  On May 11, 2001, plaintiff complained that the "screws were moving".  The physician's assistant prescribed Naproxen.[6]  In April 2002, Dawn Marini, M.D. began treating plaintiff.  Dr. Marini treated plaintiff every three months in the Chronic Care Clinic for unrelated seizure disorder.[7]  Dr. Marini never found any evidence of infection of the right upper extremity.  On October 22, 2003, plaintiff was discharged from chronic care.  The records from 2002 through 2004 are devoid of any complaints with regard to plaintiff's right arm.

On February 7, 2005, plaintiff presented to a nurse with an infection of the right upper extremity.  Dr. Marini ordered a wound culture and an oral antibiotic.  Plaintiff had daily wound and dressing checks by physician's assistants until February 14, 2005.  At that time, Dr. Marini

---

[6] Naproxen is a nonsteroidal anti-inflammatory drug used in the treatment of pain, inflammation, and osteoarthritis.  *Dorland's* at 1251.

[7] In January 2001, Dawn Marini, M.D. began her employment with the Bureau of Prisons as Clinical Director of the Health Unit at FCI Ray Brook.

claims that the wound healed and infection cleared.

On March 31, 2006, plaintiff completed a sick call sheet requesting an operation for his arm and an examination by an orthopedic specialist. On April 3, 2006, plaintiff presented to the medical unit with drainage from his right elbow. Dr. Marini referred plaintiff to Dr. Mina for a further orthopedic consultation.

On April 27, 2006, Dr. Mina re-examined plaintiff and reported that, "[t]he following surgery might help (to be attempted at a Medical Center): (1) try to clean the infection, remove all hardware, debridement, antib.; and (2) when the infection clears up, attempt an arthrodesis and bone grafting". On May 2, 2006, Dr. Marini submitted a "routine-urgent" request for plaintiff to be transferred to a federal medical center for evaluation and treatment. On May 25, 2006, x-rays were taken of plaintiff's right arm. On July 21, 2006, plaintiff requested more bandages for his arm. The physician's assistant noted, "pt has chronic drainage from old plate in his arm. Denies pain". The assistant also examined plaintiff's arm and noted, "no apparent infection".

On August 2, 2006, plaintiff was transferred to FCI - Butner. On August 21, 2006, Reginald L. Hall, M.D., performed an operation to remove broken hardware, irrigate and debride plaintiff's forearm. Plaintiff continued to received treatment at Butner for his right arm from August 2006 through October 3, 2006.[8]

**Grievances and Responses**

On May 16, 1996, while plaintiff was at the Medical Center in Springfield, the Acting Warden at Ray Brook responded to a prior Request for Administrative Remedy filed by plaintiff.

---

[8] Plaintiff's complaint contains allegations of inadequate medical treatment from December 1995 through August 2006.

In that request, plaintiff allegedly asked for a transfer to a Federal Medical Center in Rochester.[9] The Acting Warden advised that:

> Our orthopedic surgeon, who specializes in hand surgery, reviewed operative records of several previous surgeries performed in Boston. He does not feel that any surgical treatment is warranted and would not result in any functional improvement and in fact might jeopardize your right arm. There is no reason to send you to Rochester for further treatment or evaluation.

On April 4, 2006, plaintiff filed a Request claiming that reconstructive work was destroyed by "an accident" and further, "I request that my arm be totally repaired again. I have repeatedly since 1995 complained of this problem and have yet to be properly treated. I have been refused an examination by the facility doctor and/or by an orthopedic specialist. I request that these problems be rectified immediately".

On May 3, 2006, C.E. Miller, the Health Services Administrator ("HSA") of FCI Ray Brook issued an Informal Resolution addressing plaintiff's April 4th request and stated, "you have been referred to a Bureau of Prisons Medical Treatment Center for further care and treatment of your arm".

On May 23, 2006, plaintiff filed another Request for Administrative Remedy stating that Ms. Miller's response was "unacceptable". On July 7, 2006, Warden T.R. Craig denied plaintiff's request and stated:

> A thorough review of your medical record indicated you were seen by the orthopedic surgeon on April 27, 2006. Due to the extensive surgery and follow up care required for your medical condition, FCI Ray Brook is unable to provide the medical care necessary for you. Based upon your condition, a medical referral was made for you to transfer to a BOP Medical Center. You have already been accepted for care and treatment at a BOP Medical Center, where the care and

---

[9] Plaintiff's Request for Administrative Remedy is not included in the record. The Court cannot decipher the name of the Acting Warden as his/her signature is illegible.

-7-

treatment required for your needs can be met. Your transfer date is pending, based on designation processes at the other facility. In the meantime, if you are experiencing any problems or concerns about your condition, you can make a sick call appointment to address your problem until your transfer takes place.

On July 15, 2006, plaintiff filed a Regional Administrative Remedy Appeal claiming that he was still being denied medical treatment and that, "although not considered life threatening, nevertheless the condition that my arm is in does expose me to dangers others do not face".

On August 23, 2006, D. Scott Dodrill, the Regional Director, issued a Response to plaintiff's appeal stating that;

[y]ou were in satisfactory health until February 2006 when you reported a problem with your right elbow. After being evaluated by a specialist, you were approved for transfer to a Federal Medical Center (FMC). On August 2, 2006, you were transferred to FMC Butner for treatment of your right arm. To this extent, your appeal is granted."

## PROCEDURAL HISTORY

On May 22, 2007, plaintiff filed an amended complaint with the following allegations:

Beginning on or about December, 1995, and continuing up to and including August, 2006, the defendant(s) and each of them, did combine, conspire and confederate together . . . to punish plaintiff for filing his grievances and complaining against the defendants egregious "continual denial of proper medical treatment". . . (Amended Compl., ¶ 1).

The defendant(s) each of them did, with bad purpose and evil motive, embark upon a campaign of reprisal by intentionally denying the plaintiff much needed medical care for more than eleven (11) years while he suffered and continue[d] to suffer extreme pain, and in some instances throughout this period of time whereas medical care was completely withheld from the plaintiff. (Id. at ¶ 3).

It was the object of the conspiracy by defendant(s) to punish the plaintiff because of the fact that the plaintiff had filed Administrative Remedy Complaints against various individuals employed by the Bureau of Prisons, and because the plaintiff sought redress of his

grievances from the District Court of the United States. (Id. at ¶ 4).

Plaintiff was subjected to an unnecessary "slip and fall" on the grounds and properly of FCI Ray Brook when he fell, slipping on frozen slabs of ice in which had been negligently and hazardously unattended . . . Defendant T.R. Craig is vicariously liable because he chose to intentionally disregard the safety and well-being of the plaintiff's person . . . defendant . . . did act with a sufficiently culpable state of mind - that is, he knew and disregarded an excessive risk to plaintiff's health and safety. (Id. at ¶ 5A).

Defendant(s) T.R. Craig and C.E. Miller are liable to plaintiff for damages as they both chose to intentionally disregard the safety and well-being of the plaintiff's person . . . [and] act[ed] with a sufficiently culpable state of mind. (Amended. Compl, ¶ 5B).

On or about, March , 1996 . . . as a direct result of plaintiff's filings of his Administrative Remedies (grievances) defendant(s) T.R. Craig and Doctor Dawn Marini, during this period, threatened on a consistent basis to have the plaintiff confined in segregation. (Id. at ¶ 5C).

As a direct result, and after refusal to correct this problem by defendant(s) Lappin, Craig, Miller, Marini and Harris the plaintiff's arm became infected some eleven (11) years later where the Bureau was forced to remove the broken plate and treat the plaintiff for severe infection of his arm. This mounted to nothing less than deliberate indifference towards the plaintiff's well-being under the Bureau's supervision of the plaintiff. (Id. at ¶ 5D).

On February 6, 2008, defendants moved to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant Fed. R. Civ. P. 56. Defendants argued that plaintiff's claims were barred by the statute of limitations. Defendants further claimed that summary judgment was warranted dismissing plaintiff's Eighth Amendment, conspiracy and retaliation claims. The motion was referred to United States Magistrate Judge Randolph F. Treece pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c). Magistrate Judge Treece issued a Report and Recommendation. (Dkt. No. 41) recommending that the motion be treated as a motion for summary judgment and that summary

judgment be granted dismissing the action.  Plaintiff objected to the Report and Recommendation (Dkt. No. 42).

On January 6, 2009, this Court issued a Memorandum-Decision and Order.  The Court found that due to plaintiff's *pro se* status, he could not have reasonably recognized that defendants' motion might be converted to a motion for summary judgment.  This Court also held that plaintiff set forth enough facts to state a claim for deliberate indifference and retaliation to avoid dismissal. (Dkt. No. 43).  With respect to the statute of limitations, this Court concluded that dismissal was not warranted noting that although *Bivens* claims are subject to a three-year statute of limitations, plaintiff relied on events occurring as late as August 2006.  Finally, with regard to the personal involvement, defendants claimed that they were not employed with the Bureau of Prisons at the relevant times.  This Court held that evidence of defendants' employment was solely in the hands of defendants and thus, plaintiff must be given an opportunity to conduct discovery.  With respect to defendant Hugh G. Harris, M.D., the Court directed the United States Attorney to inquire of officials at FCI Ray Brook in order to obtain any available information regarding the current whereabouts of Dr. Harris, and to set forth the outcome of the inquiry in a letter filed with the Court and mailed to plaintiff.

On May 7, 2009, Magistrate Judge Treece issued a Mandatory Pretrial Discovery and Scheduling Order. (Dkt. No. 51).  Pursuant to the Order, all discovery was to be completed on or before September 7, 2009 with dispositive motions filed on or before December 7, 2009.

On December 7, 2009, defendant filed a motion for summary judgment. (Dkt. No. 60).  In a sur-reply to the motion, plaintiff claimed that he had not been served with discovery.   On March 5, 2010, the Court held a telephone conference to discuss the status of discovery.  Plaintiff acknowledged receipt of defendants' disclosure but requested an opportunity to review additional

-10-

x-rays and films of his elbow with his legal advisor.  The Court granted plaintiff's application and further noted that the new discovery could be relevant to defendants' motion for summary judgment.  Therefore, after conferring with the Court, defendants moved to withdraw the motion for summary judgment with the opportunity to renew the motion upon the conclusion of discovery.  Magistrate Judge Treece issued a Discovery and Scheduling Order granting the motion and directing defendants to re-file the motion on or before April 30, 2010.  (Dkt. No. 72).  The Court further directed defendant:

> to make arrangements for [plaintiff], and possibly his legal advisor, to review these x-rays and videotape on or before April 9, 2010.  If the x-rays and videotape do not exist, defendants shall inform [plaintiff] in writing of that fact. (Dkt. No. 72).

On April 16, 2010, defendants filed a letter motion requesting permission to re-file the motion for summary judgment. (Dkt. No. 76).  Defendants advised that a CD with several x-rays of plaintiff's arm was located and that arrangements were made for plaintiff to view the films.  Defendants further informed the Court that on March 19, 2010, a meeting was held between a case manager and plaintiff so that plaintiff could view the x-rays.  During the meeting, plaintiff refused to view the x-rays and demanded that he be permitted to view them with medical personnel.  Defendants sought leave to re-file their motion for summary judgment claiming that they fully complied with the Court's prior Orders.

On April 26, 2010, Magistrate Judge Treece issued an Order holding:

> The Court finds that defendants have complied with this Court's discovery directive by advising plaintiff, in writing, that no videotape exists and by providing plaintiff with an opportunity to review the CD of x-rays.  Plaintiff's insistence that a medical provider be present during the review goes beyond this Court's Order and such is denied.
>
> The Court grants defendants' request for reinstatement of their Motion for Summary Judgment.  (Dkt. No. 77).

-11-

On April 26, 2010, defendants re-filed the motion for summary judgment pursuant to Fed. R. Civ. P. 56.[10]  Defendants seek an order dismissing plaintiff's amended complaint alleging that: (1) the action is barred by the statute of limitations; (2) plaintiff has failed to raise a triable issue of fact regarding the personal involvement of defendants; (3) there is no meaningful allegation or proof of conspiracy; (4) plaintiff's personal disagreement with medical opinions is not a constitutional tort; and (5) defendant Miller is absolutely immune from the lawsuit as a Public Health Services employee based upon 42 U.S.C. § 233(a). (Dkt. No. 78).

**DISCUSSION**

**I.    Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See id.*  The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  "Defendants can meet their burden of establishing their entitlement to motion for summary judgment by relying on plaintiff's medical records to establish the absence of any evidence supporting deliberate indifference to his mental health

---

[10] Defendants served plaintiff with a "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion". (Dkt. No. 78, Ex. 11).

needs." *Mills v. Luplow*, 2009 WL 2579195, at *8 (W.D.N.Y. 2009).  "Though conventional wisdom might dictate the submission of affidavits from the primary actors . . . [the] defendants' decision to rely instead upon the lack of evidentiary support for plaintiff's claims, is sufficient to cast the burden upon the plaintiff to come forward with evidence demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims." *Id.*  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).

Where a plaintiff has failed to properly respond to a defendant's Statement of Material Facts ("Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record.  *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) (holding that the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement and must be satisfied that the movant's assertions are supported by the evidence in the record).  Although a plaintiff is *pro se*, bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment.  *See Higgins v. Davis*, 2001 WL 262930, at *2 (S.D.N.Y. 2001).

## II.     Eighth Amendment

Defendants claim that they are entitled to summary judgment and dismissal because plaintiff cannot demonstrate that any defendants were deliberately indifferent to his serious medical need.

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A diagnosis

or treatment must be so egregious as to be "repugnant to the conscience of mankind". *Id*. There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has a sufficiently serious illness or injury. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). A medical condition is considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Because there is no distinct litmus test, a serious medical condition is determined by factors such as '(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment; (2) whether the medical condition significantly affects daily activities; and (3) the existence of chronic and substantial pain.' " *Whitcomb v. Todd*, 2008 WL 4104455, at *10 (N.D.N.Y. 2008) (citing *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003)).

In order to meet the second element, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Sonds v. St. Barnabas Hosp. Correctional Health Servs.*, 151 F.Supp.2d 303, 310 (S.D.N.Y. 2001) (citing *Estelle*, 429 U.S. at 105-106). Instead, plaintiff must show that the defendants were "deliberately indifferent" to that serious medical condition. *Id*. In order to rise to the level of deliberate indifference, the defendants must have known of and disregarded an excessive risk to the inmate's health or safety. *Sonds,* 151 F.Supp.2d at 310 (citing *Chance*, 143 F.3d at 702). Culpable intent requires the

-14-

inmate to establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Chance*, 143 F.3d at 702 (citing *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 620 (2d Cir.1996)).

Denying or delaying access to medical care may constitute deliberate indifference. *Jones v. Lindblad*, 2009 WL 804155, at *6 (W.D.N.Y. 2009) (citing *Estelle*, 429 U.S. at 104). A delay in providing an inmate with treatment of a serious medical condition can give rise to a finding of a Eighth Amendment violation when the condition ignored is "life-threatening and fast-degenerating", or where treatment is withheld over a lengthy period of time during which the plaintiff complains of extreme pain. *Ozuno v. Vadlamudi*, 2006 WL 1977618, at *8 (N.D.N.Y. 2006) (citations omitted). Plaintiff must establish that the delay was purposeful or intended or the plaintiff must establish that the deprivation of not having treatment in the stated period was sufficiently serious. *Woods v. Goord*, 1998 WL 740782, at *12 (S.D.N.Y. 1998).

Disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds*, 151 F. Supp. 2d at 311. Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that a plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id; see also Whitcomb*, 2009 WL 4104455, at *10 (noting that disagreements over medications, diagnostic techniques (e.g., the need for x-rays), forms of treatment or the need for specialists are not adequate grounds for a §1983 claim). Even if medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Dean,* 804

F.2d at 215.

Defendants argue that there is no proof that anyone denied or delayed plaintiff's access to medical care. Defendants allege that the record belies plaintiff's contentions as plaintiff had numerous orthopedic consultations and extensive treatment for his preexisting injury. Defendants claim that plaintiff simply did not agree with the course of treatment. Plaintiff claims that defendants delay in addressing his medical needs caused his arm to become infected ultimately resulting in the removal of a plate.

The parties do not dispute that plaintiff suffered from a serious medical need. Therefore, the issue is whether defendants were deliberately indifferent to that need. Plaintiff alleges that he was denied medical care for more than eleven years, however, plaintiff's claims are wholly inconsistent with the extensive medical records. From 1996 through 2006, plaintiff received dozens of x-rays, several orthopedic consultations, prescription medication and an ultrasound examination of his right arm. Each time plaintiff complained of right arm discomfort or pain, plaintiff was treated within a few days of his complaints. Plaintiff was also examined by several different orthopedic specialists and, in 1996, plaintiff was transferred to a Medical Center for further evaluation. Plaintiff remained at the Medical Center for three months. For eight years, from late 1997 through February 2005, plaintiff made three complaints concerning his right arm. Each time, plaintiff was evaluated and treated by physician's assistant. In February 2005, plaintiff was treated for an infection in his right arm and then, made no complaints of pain in his right arm until March 2006. In April 2006, after plaintiff requested that his arm be "totally repaired", plaintiff was transferred to a federal medical facility where he underwent surgery. The record fails to establish that defendants were "deliberate indifferent".

Plaintiff claims that defendants delay in providing treatment caused an infection to

develop.  According to the record, plaintiff first developed an infection in his arm in February

2005.  The infection was treated and healed within one week.  Plaintiff did not make any further

complaints or exhibit signs of infection until over one year later, in April 2006.  In opposition to

this motion, plaintiff failed to present any evidence regarding these infections and specifically,

failed to prove that defendants ignored his condition or otherwise delayed treatment.  There is no

evidence that plaintiff suffered from any infection from February 2005 until April 2006 which

defendants deliberately refused to treat.

    Even viewing the facts in a light most favorable to plaintiff, defendants actions do not rise

to the level of egregiousness necessary for a constitutional violation.  At most, defendants may

have been negligent or may have failed to do everything they could with respect to plaintiff's

infection.  *See Vasquez v. Canfield*, 678 F.Supp.2d 96, 99-100 (W.D.N.Y. 2010) (holding that it

was unfortunate that the plaintiff's ruptured Achilles tendon was not diagnosed sooner but

medical malpractice is not a constitutional violation); *see also Williams v. Carbello*, 666

F.Supp.2d 373, 329 (S.D.N.Y. 2009) (holding that the plaintiff did not state a valid claim under

the Eighth Amendment because the defendant was, at most, merely negligent for deciding to

monitor the plaintiff's condition before sending him to a hospital).  To the extent that it took time

for plaintiff to undergo surgery, that delay does not constitute deliberate indifference.  The

medical record is replete with references and opinions by several specialists that any surgical

intervention could be harmful to plaintiff.   Moreover, plaintiff has not offered any medical

evidence that his surgery should have been conducted sooner.  *See Bennett v. Erie County*

*Holding Ctr. Med. Dep't*, 2006 WL 897817, at *9 (W.D.N.Y. 2006) (citations omitted) (holding

that "an inmate who complains that delay in medical treatment rose to a constitutional violation

must place verifying medical evidence in the record to establish the detrimental effect of the delay

in medical treatment to succeed").  Plaintiff presented with an infection on April 3, 2006.

Plaintiff was examined by an orthopedic specialist on April 27th and approved for a medical

transfer on May 2nd.  Plaintiff was transferred to the medical facility on August 2nd and surgery

was performed on August 21st.  Considering the facts surrounding plaintiff's treatment and

transfer, the five month delay between April 3rd and August 21st, without more, is insufficient to

establish an Eighth Amendment violation.  *See Balkum v. Unger*, 2009 WL 290439, at *5

(W.D.N.Y. 2009).  Indeed, defendant Craig addressed plaintiff's transfer on July 7, 2006 in his

Response to plaintiff's Request for Administrative Remedy stating that plaintiff was accepted for

a transfer but that, "your transfer date is pending, based on designation processes at the other

facility".  Craig further advised, "[i]n the meantime, if you are experiencing any problems or

concerns about your condition, you can make a sick call appointment to address your problem

until your transfer takes place".  The record clearly demonstrates that the delay was not

purposeful or intended.

Plaintiff claims that Dr. Harris cannot be located and therefore, cannot be questioned

about the decisions he made.  As discussed *infra*, Harris has not been served with the complaint

largely based upon plaintiff's neglect.  Moreover, Dr. Harris' explanations and opinions have no

bearing on the issues at hand.  The record establishes that defendants were responsive to

plaintiff's complaints of pain and continued requests for treatment.  Clearly, defendants did not

provide plaintiff with the specific treatment he requested.  A disagreement concerning the course

of treatment, without further evidence, is insufficient to sustain a cause of action for violations of

plaintiff's Eighth Amendment right.  Plaintiff was treated by a number of different medical

professionals who are afforded wide discretion in their treatment of prisoners.  *See Aquino v.

Kooi*, 2007 WL 201169, at *4 (N.D.N.Y. 2007).

-18-

Plaintiff's conclusory assertions that he received improper medical attention, absent other documentation, fails to constitute evidence sufficient to raise issues of fact to defeat summary judgment. *See Williams v. Coughlin*, 650 F.Supp. 955, 957 (S.D.N.Y. 1997) (granting summary judgment where "plaintiff's affidavit and deposition . . . [did] not contain facts involving manifestations of . . . deliberate indifference . . ."). Indeed, plaintiff's complaints are contradicted by the record which establishes that plaintiff received more than adequate medical care for his complaints. No reasonable fact finder could conclude that defendants were deliberately indifferent to plaintiff's health. Accordingly, defendants' motions for summary judgment and dismissal of plaintiff's claims that defendants violated his Eighth Amendment rights is granted.

## III.    Conspiracy

Defendants seek summary judgment and dismissal of plaintiff's conspiracy claims arguing that plaintiff offers no description of any agreement and does not identify any overt act in furtherance of a conspiracy. Plaintiff does not respond to this contention.[11]

To sustain a conspiracy claim under 42 U.S.C.§ 1983, a plaintiff must establish: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Hill v. Melvin*, 2006 WL 1749520 at *12, n. 23 (S.D.N.Y. 2006) (citations and internal quotation marks omitted). Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983), *cert. denied*, 464 U.S. 857 (1983). The complaint and/or the record must identify the parties to the alleged conspiracy, a showing of

---

[11] Plaintiff failed to respond to defendants' argument that the conspiracy claim should survive summary judgment lightens defendants' burden with regard to the dismissal. *See Williams v. Broome County*, 2009 WL 5102258, at *5 (N.D.N.Y. 2009) (citations omitted).

agreement or a "meeting of the minds", or any details as to the time and place of the conspiracy or its objective. *Warren v. Fischl*, 33 F.Supp.2d 171, 177 (E.D.N.Y.1999). The mere use of the word "conspiracy", without more, does not state a claim. *Rivera v. Goord*, 119 F.Supp.2d 327, 345 (S.D.N.Y. 2000). A plaintiff must offer more than, "sweeping, conclusory pleadings of conspiracy to fall within the scope of conspiracy to deprive plaintiff[] of [his] civil rights. *Webb v. Goord*, 197 F.R.D. 98, 103 (S.D.N.Y. 2000) (citing *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 968 F.2d 286, 290-91 (2d Cir.1992)).

Plaintiff alleges that from 1995 through 2006, defendants conspired against him to deny him proper medical care. Plaintiff failed to present any facts relating to any agreement or any communications between defendants regarding the alleged conspiracy. *See Whitcomb*, 2008 WL 4104455, at *13 (citing *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 71 (2d Cir. 1999)). Plaintiff offers no factual basis of any agreement, action in concert or overt conduct by any of the defendants. Accordingly, the Court finds that summary judgment and dismissal of plaintiff's conspiracy claims is warranted.

**IV.    Retaliation**

In the prior Memorandum-Decision and Order, this Court noted that:

> [P]laintiff alleged that he repeatedly complained and filed grievances regarding the continuous denial of proper medical treatment for his arm, and that beginning in December 1995 and continuing up to August 2006, defendants retaliated against him for the complaints and grievances by intentionally denying him the medical care he needed. As such, plaintiff has alleged enough facts to state a claim for retaliation that is plausible on its face". (Dkt. No. 43, p. 5).

To prove a First Amendment retaliation claim under Section 1983, a plaintiff must show that the speech or conduct was protected and that there was adverse action and a causal connection between the protected speech and adverse action. *Kotler v. Doneli*, 2010 WL

2574094, at *1 (2d Cir. 2010) (citing *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). To constitute an adverse action, a plaintiff must establish that the action would deter a similarly situated individual from exercising his constitutional right. *Tatta v. Wright*, 616 F.Supp.2d 308, 320 (N.D.N.Y. 2007) (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).   The filing of prison grievances is a constitutionally protected activity. *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir.2003).

    Defendants do not address retaliation in this motion for summary judgment but based upon this Court's decision to award summary judgment and dismissal of the Eighth Amendment causes of action, summary judgment and dismissal of all retaliation claims is also appropriate.  As discussed above, the record lacks any evidence demonstrating that defendants were deliberately indifferent to plaintiff's serious medical needs.  Indeed, the record amply shows that plaintiff received extensive treatment for his pain and discomfort.  While plaintiff's filing of grievances is a protected activity, there is no basis on which a reasonable jury could conclude that defendants denied plaintiff necessary medical care as a result of plaintiff filing inmate grievances. *See Snyder v. McGinnis*, 2007 WL 3274691, at *10 (W.D.N.Y. 2007).  Plaintiff cannot compensate for this failure of proof by relying on unsupported speculation. *See Candelaria v. Baker*, 2010 WL 774159, at *16 (W.D.N.Y. 2010) (holding that the plaintiff's conclusory statements that the defendants denied proper medical care in retaliation for filing grievances was insufficient to create a material issue of fact).

    Plaintiff also all alleges that, "on or about March 1996", defendants Marini and Craig threatened to confine plaintiff in segregation.  This allegation lacks merit.  Marini filed an affidavit averring that she was not employed with the Bureau of Prisons until 2001.  Plaintiff has

-21-

submitted no proof to contradict this assertion. Moreover, threats made to an inmate, without more, do not rise to the level of a constitutional violation. *Pledger v. Hudson*, 2005 WL 736228, at *5 (S.D.N.Y. 2005) (citing *Dawes*, 239 F.3d at 491); *see also Malsh v. Austin*, 901 F.Supp. 757, 763 (S.D.N.Y. 1995) (holding that threats of possible segregation in retaliation for seeking dental care do not state a claim where the plaintiff does not suffer injury). Plaintiff does not argue or even claim that he suffered any injury as a result of the alleged threats. Further, plaintiff's claims of retaliation involving the alleged threats are conclusory and speculative and therefore, must be dismissed. Consequently, the Court finds that summary judgment and dismissal of all of plaintiff's retaliation causes of action is appropriate.

## V.    Personal Involvement, Absolute Immunity and Statute of Limitations

As discussed above, plaintiff suffered from no constitutional violation. In light of this Court's finding that defendants are entitled to summary judgment on the merits dismissing plaintiff's Eighth Amendment medical care claim, conspiracy claims and retaliation claims, on the constitutional merits, the Court's declines to address defendants' alternative arguments regarding personal involvement, absolute immunity or statute of limitations. *See Cowart v. McGinnis*, 2007 WL 4030000, at *9 (W.D.N.Y. 2007).

## VI.    Discovery Issue

In opposition to the motion, plaintiff claims he was not granted adequate discovery. Specifically, plaintiff claims that he needed a medical provider to, "help him with the CD player and to locate the x-rays of the arm".

In this Circuit, a party claiming that he has been denied adequate discovery must make a four-part showing: (1) the party must specify the nature of the uncompleted discovery; (2) the party must demonstrate how the facts sought are reasonably expected to create a genuine issue of

fact; (3) the party must explain what efforts he has made to obtain those facts; and (4) the party must explain why those efforts were unsuccessful. *Palacio v. Ocasio*, 2006 WL 2372250, at *12 (S.D.N.Y. 2006) (citations omitted). Moreover, a plaintiff claiming inadequate discovery must file an affidavit under Rule 56(f).[12]  *Id.* (the court could deny the plaintiff's request for additional discovery solely on the basis that the plaintiff failed to file a Rule 56(f) affidavit). A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (internal citations and citations omitted).

Here, plaintiff has not filed a Rule 56(f) affidavit. Even assuming plaintiff followed the proper procedures, the Court nonetheless finds that plaintiff's request for additional discovery fails the 4-part test. Plaintiff claims that the medical provider would assist him in reading the x-rays but failed to assert how that would create a genuine issue of fact precluding summary judgment. Moreover, plaintiff has not explained what efforts he made to obtain additional discovery and why they were unsuccessful. Plaintiff had ample opportunity to consult an expert of his own and failed to do so. Plaintiff was provided with an opportunity to review the CD with x-rays of his arm on March 19, 2010 and refused to view the x-rays. Plaintiff claims that he made a request to the Warden that he view the films with the medical department so that explanations

---

[12] Fed.R.Civ.P. 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*Palacio*, 2006 WL 2372250, at *12, n. 30.

could be provided but plaintiff failed to address this issue with the Court until confronted with a

motion for summary judgment.  From March 19, 2010 until April 16, 2010, plaintiff made no

demands and filed no requests with the Court concerning the x-rays.  Instead, plaintiff waited

until he was presented with a motion for summary judgment to address the need for discovery.

Plaintiff has been less than diligent in this regard and under these circumstances, has failed to

present the Court with an adequate basis upon which to deny summary judgment. *See Negron v.*

*Macomber*, 1999 WL 608777, at *5 (S.D.N.Y. 1999) (the plaintiff cannot defeat the defendants'

motion with bald, conclusory allegations that he needs more discovery).

      Moreover, the Court notes that pursuant to Fed. R. Evid. 706, a court may appoint an

expert witness.  *See Mills v.Lupow*, 2009 WL 2606240, at *2 (W.D.N.Y. 2009).  However, the

determination to appoint an expert rests solely with the Court and an expert should only be

utilized to aid the Court with technical issues, not to further partisan interests.  *Id*. (holding that

given the large volume of cases involving indigent prisoners and medical care, the Court must

consider the substantial expense it may bear in appointing an expert).  Moreover, in Eighth

Amendment medical care cases, where a prisoner is alleging deliberate indifference to his serious

medical needs, an analysis of the subjective element of deliberate indifference turns on the state

of mind of the official and does not involve "probing, complex questions concerning medical

diagnosis and judgment."  *Pabon v. Goord*, 2001 WL 856601, at *2 (S.D.N.Y. 2001).

      In this case, plaintiff previously presented this argument before Magistrate Judge Treece.

The Magistrate Judge considered and denied plaintiff's request for a medical provider. (Dkt. No.

77).  This Court agrees with the Magistrate and finds that the issues presented herein do not

require or warrant an appointment of an expert medical witness.  Thus, Magistrate Judge Treece's

ruling will not be disturbed.

## VII.    Dr. Harris

Rule 4(m) of the Fed. R. Civ. P. states that if "a defendant is not served within 120 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[13]  "If the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period ."   *Spear v. Hugles*, 2009 WL 2176725, at *2 (S.D.N.Y. 2009).  In determining whether a plaintiff has shown good cause under Rule 4(m), courts in this Circuit consider whether: (1) the plaintiff made reasonable efforts to serve the defendant; and (2) the defendant was prejudiced by the delay in service.  *Id.*

When a plaintiff proceeds *in forma pauperis*, such as is the case in this instance, the court is obligated to issue the plaintiff's process to the United States Marshal, who must in turn effect service upon the defendants, thereby relieving the plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint. *Applegate v. Annucci*, 2008 WL 2725087, at *5 (N.D.N.Y. 2008).  However, a *pro se* plaintiff may not "stand idly by upon being notified that efforts by the U.S. Marshals Service to serve a particular defendant have been unsuccessful", but rather, "the plaintiff [must] develop, though pretrial discovery or otherwise, any additional information necessary to permit service by the United States Marshals Service".  *Id.* (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir.1996)).

While a district court has a duty to assist *pro se* plaintiffs in securing sufficient information to make service possible, claims are subject to dismissal for failure to serve when the situation is the result of the plaintiff's neglect.  *Brown v. New York City Dep't of Corr.*, 2010 WL

---

[13] Local Rule 4.1(b) shortens the time for service from the 120 day period under Rule 4(m) to sixty days. See N.D.N.Y.L.R. 4.1(b).

2813637, at *5 (S.D.N.Y. 2010) (the plaintiff made no requests for help to which the Court did not respond) (citing *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997)).

Here, this Court previously directed the United States Attorney to obtain any available information regarding the current whereabouts of Hugh G. Harris, M.D. and set forth the outcome in a letter filed with the Court and mailed to the plaintiff.   On January 13, 2009, the U.S. Attorney provided a Status Report with the last known business address of defendant Dr. Harris as Ozarks Orthopedic Association in Springfield, Missouri.  (Dkt. No. 44).  On January 29, 2009, a Summons was re-issued to Dr. Harris (Dkt. No. 45) but was returned as undeliverable (Dkt. No. 49).  On June 16, 2009, the Summons was re-issued to Dr. Harris at the same Springfield address.. (Dkt. No. 54).  On August 17, 2009, the Summons was returned unexecuted. (Dkt. No. 58).  From August 2009 to date, plaintiff has filed letter motions and affidavits with the Court.  None of those submissions reference or even mention the issue of service upon Dr. Harris.  In addition, on March 15, 2010, plaintiff appeared, via telephone, for a discovery conference.  During that conference, plaintiff did not raise the issue of service upon Dr. Harris. Plaintiff has made no requests for assistance from the Court or defense counsel.  It has been well over three years since plaintiff filed his complaint and Dr. Harris remains unserved.  Plaintiff has been on notice of this issue since the first motion for summary judgment was filed in February 2008.  Plaintiff did not address this issue in his opposition to the within motion.  Thus, plaintiff has failed to establish "good cause" for his continued failure to served Dr. Harris.   Accordingly, plaintiff's claims against Dr. Harris are dismissed without prejudice for failure to serve pursuant to Rule 4(m).

## CONCLUSION

**It is therefore**

**ORDERED** that defendants Lappin, Craig, Miller and Marini's motion (Dkt. No. 78) for

summary judgment and dismissal of plaintiff's complaint is granted in its entirety; and it is further

**ORDERED** that plaintiff's action against Dr. Harris is dismissed without prejudice for

failure to serve.

**IT IS SO ORDERED**.

Dated: September 27, 2010
        Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge